

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL SHAUN SATTERFIELD, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:06-1806-HFF |
| | § | |
| CITY OF MAULDIN, CITY OF CONWAY, | § | |
| and CHRISTOPHER MICHAEL BEECO, | § | |
| (in his Individual Capacity and in his | § | |
| Official Capacity as an Officer of the City | § | |
| of Mauldin Police Department), | § | |
| Defendants. | § | |

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

This case was filed as a 42 U.S.C. § 1983 action.  Plaintiff also alleges related state claims.

The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and over

the state claims pursuant to 28 U.S.C. § 1367.  For the reasons stated below, the Court will grant

Defendants' motions for summary judgment as to the federal claims and will dismiss the state

claims.

## II.     FACTUAL AND PROCEDURAL HISTORY[1]

In May of 2003, the Conway Police Department (CPD) began an investigation into related

robberies at the First Federal Bank and the LaPalma convenience store in Conway, South Carolina.

---

[1]This section of the opinion is adopted in large measure from Plaintiff's memoranda in
opposition to Defendants' motions for summary judgment.

1

A number of officers from the CPD were involved in the investigation, including Detective Tammy Staples, who was in charge of the investigation.

On May 15, 2003, Staples was contacted by the Myrtle Beach Police Department, whose officers had seen a photograph of the robber taken by the bank's surveillance camera. The Myrtle Beach Police Department informed Staples that the suspect was named "Richard Shane Satterfield," and, further, that the Florence County Sheriff's Department had photographs of the suspect.

As a result, Staples contacted the Florence County Sheriff's Office to obtain a photo of a "Richard Shane Satterfield." The photograph—which turned out to be the actual bank robber—had been taken at the Florence County Detention Center.

After obtaining the photographs from Florence County, Staples and Detective Sean Addison interviewed a couple, Michael and Julie Lansburg, who claimed to have information about the suspect. The Lansburgs confirmed that the man shown in the photo supplied by Florence County had spent time in their home, along with a man named Rusty Sanders. The Lansburgs stated that the suspect's name was "Shawn."

On May 17, 2003, the CPD interviewed Libby Faulkner, who worked at an outreach shelter in Myrtle Beach. She also recognized the photograph, and stated that the suspect had stayed in the shelter. She identified the suspect as "Michael Satterfield." On or around May 18, 2003, the CPD made a significant break in the investigation, when James "Rusty" Sanders was arrested on an unrelated charge.

When questioned, Sanders confessed to being an accomplice in both robberies, which he claimed were carried out by a man with whom he had previously spent time in the outreach shelter. Sanders first identified the man committing the robberies as "Shane," but later stated that his name was "Shane Michael" or "Michael Shane." Thus, over the course of the investigation, Staples was

2

provided the following names for the suspect in the robberies: Richard Shane Satterfield, Shawn, Michael Satterfield, Shane, Shane Michael, and Michael Shane.

In 2003, the CPD had access to an electronic database system for law enforcement agencies-- the State Wide Offender Record Database (SWORD). This database compiles information on individuals who have had prior involvement with the South Carolina Department of Corrections. The SWORD database was used by the CPD to obtain personal identifying information for suspects in crimes. The CPD used this personal identifying information, obtained from the SWORD database, to fill out arrest warrants.

In 2003, the job of searching the SWORD database was delegated to Katina Hipp, the CPD's Victim Advocate. Hipp was neither an investigator nor a detective, and had no training in either of those fields.

In this case, Hipp attempted to search the SWORD database to determine whether there were any persons with criminal records who had names similar to those identified in the investigation. Following Hipp's search of the SWORD database, she placed in the investigative file a lone page containing only a single entry for "Michael Shaun Satterfield," date of birth January 15, 1964 - Plaintiff.

On May 19, 2003, Staples prepared Warrant H-43228 for the bank robbery and Warrant H-438227 for the petit larceny of the LaPalma convenience store. Plaintiff was listed as the wanted individual, as the warrant contained his height, weight, driver's license number and date of birth, all taken directly from the printout generated by Hipp. Staples subsequently presented the warrants and the supporting affidavits to Magistrate Judge Jane Mackey, who issued them.

3

On June 16, 2003, Staples received a call from Agent Linda Keene of the FBI. Agent Keene informed Staples that Michael Shane Satterfield (the actual bank robber) was in federal custody.

On November 9, 2005, Plaintiff went to the Mauldin Police Department (MPD) to report that someone was using his identity and credit card information to obtain cable television service. He spoke with Officer Christopher M. Beeco. Beeco used Plaintiff's driver's license to run a check for outstanding warrants, and discovered the outstanding warrants issued by the CPD. Plaintiff stated to Beeco that he had lived in the Conway or Myrtle Beach area approximately two-and-a-half years before. The warrants were dated approximately three years prior to the date of the arrest. Beeco sent a request for confirmation to the CPD. In return, the CPD confirmed that the warrants were outstanding, and requested that the Plaintiff be arrested and held for extradition to Conway.

Beeco arrested Plaintiff and Plaintiff was transferred to the Greenville County Law Enforcement Center, where he was held for approximately one day. Plaintiff obtained a lawyer and appeared in court in Conway, at which point he was informed that his arrest was a mistake.

Plaintiff subsequently filed the instant action, alleging causes of action for deprivation of liberties, unlawful arrest, denial of due process, battery, negligence/gross negligence, false arrest, false imprisonment, and intentional infliction of emotional distress. The alleged constitutional violations were brought pursuant to 42 U.S.C. § 1983, and the tort claims were brought under the South Carolina Tort Claims Act.

Defendants filed motions for summary judgment and Plaintiff has responded. Having been fully briefed, the motions are now ripe for adjudication.

4

## III.     STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court reviews the record by drawing all inferences most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The adverse party must show more than "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.  If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 322-23.

Hence, the granting of summary judgment involves a three-tier analysis.  First, the Court determines whether a genuine issue actually exists so as to necessitate a trial.  Fed. R. Civ. P. 56(e).  An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Second, the

Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

## IV.  DISCUSSION

### A.  *Defendant Conway's Motion for Summary Judgment*[2]

To establish a cognizable § 1983 claim, Plaintiff must prove "(1) that the defendant was acting under the color of state law in the actions complained of; and (2) that the defendant deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Clark v. Link*, 855 F.2d 156, 161 (4th Cir. 1988). Plaintiff alleges that the warrant issued in his name was not based on probable cause and therefore violates the United States Constitution. Specifically,

---

[2]For purposes of this section, the terms Defendant Conway and CPD may be used interchangeably, as may the terms Defendant Mauldin and MPD.

Plaintiff alleges that the CPD violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure when the CPD applied to the Magistrate Judge for the warrant. The Court disagrees.

### 1.    *Probable cause*

A warrant is properly issued, and therefore does not violate the Constitution, if "the judicial officer issuing such a warrant [is] supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whiteley v. Warden*, 401 U.S. 560, 564 (1971). The Fourth Circuit has held that "[u]nquestionably, '[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable.'" *Miller v. Prince George's County MD*, 475 F.3d 621, 627 (4th Cir. 2007) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996)).

In *Miller*, the Court held that a warrant is deficient and lacks probable cause if the accompanying affidavit is dishonest. *Id.* A warrant affidavit is considered to be dishonest if the officer in question "deliberately or with a reckless disregard for the truth made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Id.* (quotations and internal citations omitted).

### i.    *Reckless disregard*

To demonstrate reckless disregard, Plaintiff must provide evidence that Staples either doubted the truthfulness of the statements in the warrant affidavit or omitted evidence that would negate probable cause. *Id.* Plaintiff argues that Staples acted with reckless disregard by using Plaintiff's information placed in the file by a Victim's Advocate volunteer. Because Staples was

aware of six different names in Plaintiff's file, Plaintiff contends that Staples recklessly disregarded discrepancies between those names and Plaintiff's name when she used the computer printout of Plaintiff to fill out the warrant. Plaintiff asserts that, at the very least, "Staples must have entertained serious doubts as to the truth of her statements or had obvious reasons to doubt the accuracy of the information she swore to in the affidavits supporting the arrest warrants." (Pl.'s Mem. Opp. Def. Conway's Mot. Summ. J. 13.)

Reckless disregard is not established if an officer has any or some doubt as to the truthfulness of the statements in the warrant affidavit, only if the officer "entertained serious doubts as to the truth of [her] statements or had obvious reasons to doubt the accuracy of the information [s]he reported." *Miller*, 475 F.3d at 627 (citations omitted). Similarly, an officer must omit facts that he or she "knew would negate probable cause" to consider the warrant affidavit to be dishonest. *Id.* at 627 (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)). "A plaintiff's allegations of negligence or innocent mistake by a police officer will not provide a basis for a constitutional violation." *Id.* (citation and quotation marks omitted).

Plaintiff has demonstrated that certain steps could have been taken to prevent Plaintiff's name and information from appearing on the warrant, and the CPD has admitted that steps have been taken to avoid future mistakes. However, Plaintiff has failed to demonstrate that Staples knew she was omitting facts that would negate probable cause or that Staples had serious doubt as to the truthfulness of her statements in the warrant affidavit.

*ii.    Materiality of the statements and/or omissions*

Even if Plaintiff could establish that Staples acted with reckless disregard, Plaintiff has failed to demonstrate that the false statements and/or omissions were material. To establish that false

statements and/or omissions are material, the plaintiff must demonstrate that a corrected affidavit would be insufficient to supply probable cause for the issuance of a warrant for the plaintiff.  *Id.* Plaintiff's failure to satisfy his burden is fatal to his claim.

In the instant case, if anything, omitted evidence such as the other names provided in the investigation and the fact that the co-defendant identified Plaintiff as either Shane Michael or Michael Shane provides additional cause for a warrant to be issued for Michael S. Satterfield.  Even knowing that the "S" on the warrant stood for Shaun and not Shane does not destroy probable cause. Plaintiff lived in Myrtle Beach, South Carolina, around the time of the Conway robbery and the name Shawn was also provided, in addition to those given by the co-defendant.  If anything, this additional information strengthens the links between the robbery suspect and the person named in the warrant.

The actions and inactions complained of by Plaintiff are evidence of, at most,  negligence. Negligence, however, does "*not* provide the basis for a constitutional violation."  *Id.* at 627-28 (quoting *Franks v. Deleware*, 438 U.S. 154, 171 (1978) (emphasis in original).  Because no reasonable jury could find that the warrant was issued without probable cause, Defendant Conway's motion for summary judgment must be granted as to this issue.

### 2.     *Defendant Conway is not liable*

Even if the Court had concluded that the CPD violated Plaintiff's constitutional rights, the Court would find that Defendant Conway was not liable.  The standards for imposing liability on a municipality under § 1983 are well settled in this circuit:  "The substantive requirements for proof of municipal liability are stringent."  *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir.1994).   Of course,  the  basic  premise  is  that  respondeat  superior  is  not  applicable  to

municipalities in the context of § 1983. Municipalities may not be held liable for the constitutional torts of their officers, employees, or agents merely because of the agency relationship. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978). To establish municipal liability under section 1983, Plaintiff must prove the existence of an official policy or custom of the municipality that proximately caused the deprivation of his rights. *Spell v. McDaniel*, 824 F.2d 1380, 1385-87 (4th Cir.1987).

Municipal policies include formal and informal decisions made by municipal officials authorized to make final decisions. *Id*. at 1385-86. Municipal customs are established by persistent, widespread practices of municipal officials, whether specifically authorized or not, which are so permanent and well settled as to have the force of law. *Id*. at 1386. Such practices are attributable to a municipality when they become so frequent in occurrence that actual or constructive knowledge is imputed. *Id*. at 1387.

Because the Court has found no constitutional violation here, there can be no municipal liability. Nevertheless, even if the Court had found merit in Plaintiff's claim, it would not find Defendant Conway liable. Simply stated, Plaintiff has failed to establish that there was a policy, practice or custom in place at the time of the alleged violation that would expose Defendant Conway to liability. Therefore, summary judgment on this issue is proper.

B.    *Defendant Mauldin and Defendant Beeco's Motion for Summary Judgment*

As previously discussed, a cognizable § 1983 claim requires that Plaintiff be deprived of "a right, privilege or immunity secured by the Constitution or laws of the United States." *Clark*, 855 F.2d at 161. Defendant Mauldin and Defendant Beeco argue that Plaintiff has not stated a cognizable § 1983 claim because Plaintiff's arrest was based on a facially valid warrant and was

10

therefore lawful. Defendants rely on cases citing *Mitchell v. Aluisi*, 872 F.2d 577 (4th Cir. 1989), for the proposition that an arrest that is undertaken pursuant to a facially valid warrant does not violate the Fourth Amendment. The Court agrees.

### 1.     *A lack of due care is not violative of the Constitution*

The *Mitchell* Court affirmed the granting of summary judgment in favor of sheriff's deputies who arrested the plaintiff pursuant to a canceled bench warrant. *Id.* at 579.   In support of its argument, the *Mitchell* Court cited a Supreme Court decision in which the plaintiff had been arrested pursuant to a warrant issued for the plaintiff's brother. *Id.* (discussing *Baker v. McCollan*, 443 U.S. 137 (1979)).   The present case is different from *Baker* because the plaintiff in that case did not challenge the validity of the warrant and the Court held that "[a]bsent an attack on the validity of the warrant under which he was arrested, respondent's complaint. . . . gives rise to no claim under the United States Constitution."  *Baker*, 443 U.S. at 143-44.

Plaintiff has challenged the validity of the warrant in this case; however, the Court has concluded that the warrant was based upon evidence sufficient to establish probable cause and did not violate Plaintiff's constitutional rights. Therefore, the logic and principles of the cases on which Defendant Mauldin and Defendant Beeco rely are applicable to the facts of this case.

Plaintiff argues that this case is different from *Mitchell* because Defendants "should have known better." Whether Defendants should have known better is at most a question of due care, and the *Mitchell* Court made clear that questions of due care do not rise to the level of constitutional violations. *Mitchell*, 872 F.2d at 579.

2.     *A facially valid warrant can provide probable cause*

Plaintiff additionally relies on *Whiteley* for the proposition that an erroneously issued warrant cannot provide probable cause for an arrest.  An erroneously issued warrant, though, is one that is not supported by probable cause.  *Whiteley*, 401 U.S. at 568  The *Whiteley* Court held that a warrant unsupported by probable cause cannot serve as a shield for the arresting officer even when the warrant is facially valid.  *Id.  Whiteley*, however, does not control the present outcome because the warrant in this case was supported by "information requisite to support an independent judicial assessment of probable cause."  *Id.*

3.     *Plaintiff's detention did not violate the Fourteenth Amendment*

Additionally, the *Baker* Court assumed that "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will[,] after the lapse of a certain amount of time[,] deprive the accused of liberty without due process of law.  But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation." *Baker*, 443 U.S. at 145.

Had Plaintiff spent multiple nights in prison continually arguing a case of mistaken identity, Plaintiff's detention may have risen to the level of a deprivation of liberty.  Plaintiff, however, was released the day after his initial detention when officers discovered that the warrant had been issued for the wrong person.  The Court, therefore, cannot conclude that Plaintiff's single night of detention rises to the level of a Constitutional violation.

Because no material fact exists which might affect the outcome of the case, it is proper for the Court to rule on this motion for summary judgment as a matter of law.  Accordingly, the Court

must grant summary judgment for Defendant Mauldin and Defendant Beeco as to Plaintiff's federal claims.

###### 4.     *Qualified Immunity*

Defendant Beeco argues that he is entitled to qualified immunity from suit as well.  The Court is convinced.

As a general rule, government officials acting reasonably within the scope of their authority are immune from both defending themselves in a legal action and possible subsequent liability. Reasonable conduct is defined as conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The test "generally turns on the 'objective legal reasonableness' of the actions," *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 819), and ignores considerations of the official's subjective intent.  Stated differently, the Court looks to the law itself.  The knowledge or intent of the particular official is irrelevant.

To ascertain whether an official violated clearly established law, the Court looks to the law at the time the alleged offense was committed.  *Harlow*, 457 U.S. at 818.  The law must be established with some particularity.  *Anderson*, 483 U.S. at 640.  That is, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  That is not to say, however, that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law, the unlawfulness of the action must be apparent.  *Id*. (citations omitted).

The Supreme Court has formulated its test for qualified immunity by balancing competing interests "'in vindication of citizens' constitutional rights and in public officials' effective

performance of their duties [.]'" *Anderson*, 483 U.S. at 639 (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)).

> In the interests of accomplishing public goals and encouraging public service, government officials should not be under the burden of defending themselves against every claim raised by an aggrieved individual, but neither should they be given free rein and the power of a governing position to infract the rights of citizens. The resulting objective test satisfies both interests by holding public officials responsible only for conduct that a reasonable official should readily be able to determine unlawful.

*Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992).

When considering an individual defendant's qualified immunity defense, the Court looks to substantive law applicable at the time of the alleged injury to Plaintiff. In so doing, the Court cannot find that the applicable substantive law was so clearly established at the time of the complained incident as to give notice to a reasonable police officer that an arrest in circumstances such as presented herein was unlawful. Therefore, the Court will grant summary judgment to Defendant Beeco on this issue.

### 5. *Defendant Mauldin is not liable*

Even if the Court had concluded that the MPD or Beeco violated Plaintiff's constitutional rights, the Court would find that Defendant Mauldin was not liable. First, because the Court has found no constitutional violation here, there can be no municipal liability. Second, even if the Court had found merit in Plaintiff's claim, it would not find Defendant Mauldin liable because Plaintiff has failed to establish that there was a policy, practice, or custom in place at the time of the alleged violation that would expose Defendant Mauldin to liability. Therefore, summary judgment on this issue is also appropriate.

14

C.     *State Law Claims*

This Court originally had jurisdiction over Plaintiff's state claims against pursuant to 28 U.S.C. § 1367.  Section 1367(c)(3) provides, however, that the Court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

District courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).  In its discretion, the Court has considered "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.  Having weighed those factors, the Court is of the opinion that the remaining state claims should be adjudicated in state court.

V.     **CONCLUSION**

Accordingly, based on the foregoing discussion and analysis, the Court concludes that 1) Defendants' motions for summary judgment are **GRANTED** as to Plaintiff's federal claims and 2) Plaintiff's state claims are dismissed pursuant to § 1367(c).

        **IT IS SO ORDERED.**

Signed this 17th day of September, 2007, in Spartanburg, South Carolina.

                              s/ Henry F. Floyd
                              HENRY F. FLOYD
                              UNITED STATES DISTRICT JUDGE